# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-22-00254-CV

---

**Kirsten Hanna, Upside Up Properties, LLC, and Upside Up Ventures, Inc., Appellants**

**v.**

**M. Matthew Williams; David Howell; Law firm of M. Matthew Williams; Leighton, Williams, Adkinson, & Brown, PLLC; and Leighton, Michaux, Adkinson, & Brown, PLLC, Appellees**

---

### FROM THE 53RD DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-21-000957, THE HONORABLE KARIN CRUMP, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Appellants Kirsten Hanna, Upside Properties, LLC, and Upside Up Ventures, Inc. (collectively Hanna), appeal from the trial court's (1) two orders dismissing under the Texas Citizens Participation Act (TCPA) appellants' professional-negligence and related claims against their former attorneys and (2) order denying appellants' application for attorney's fees. Appellees are M. Matthew Williams, David Howell, and the Law Firm of M. Matthew Williams (collectively the Williams Parties) and Leighton, Williams, Adkinson, & Brown, PLLC and Leighton, Michaux, Adkinson, & Brown, PLLC (collectively the Leighton Parties). For the following reasons, we will reverse the portion of the trial court's order granting the TCPA motion of the Williams Parties that awarded them $20,000.00 in attorney's fees and remand that issue for a redetermination of fees. We affirm the remainder of that order, affirm the trial court's

order granting the TCPA motion of the Leighton Parties, and affirm the trial court's order denying Hanna's application for attorney's fees.

## BACKGROUND

In 2014, Kirsten Hanna formed Upside Up Properties, LLC and Upside Up Ventures, Inc., with the intent to "flip houses." Later that year she purchased a residential property in Austin, retained the services of professionals and subcontractors to renovate the home, and in early 2016 sold the renovated home to two buyers. About nine months later, the homebuyers sent a Texas Deceptive Trade Practices Act (DTPA) demand letter to Hanna alleging that she had made material misrepresentations about the property, which had serious defects, including that the older sections of the home had begun to separate and split from the newly constructed portions.

Hanna sought legal counsel to respond to the demand letter and in early 2017 hired Williams and his firm at the time, appellee Leighton, Williams, Adkinson, & Brown, PLLC (LWAB),[1] to represent her interests. Hanna alleges that she informed Williams and LWAB that a "drawn-out lawsuit with exorbitant fees was not feasible and that she was looking for the most cost-effective way to be removed from any potential lawsuit." She informed Williams that she had provided the homebuyers with a seller's disclosure, the homebuyers had had the ability and opportunity to conduct inspections of the property before purchase, and the homebuyers had purchased the property "as is" pursuant to the standardized resale contract promulgated by the Texas Real Estate Commission.

---

[1] The firm is now named Leighton, Michaux, Adkinson, & Brown, PLLC (LMAB), another appellee.

2

About July 2017, Williams left LWAB and started his own firm, the Law Firm of M. Matthew Williams, PLLC (Williams Firm); appellee David Howell is employed by the Williams Firm. Hanna alleges that although Williams and his former and new firms had the "ethical obligation to provide [her] with sufficient notice and information regarding Williams'[s] departure from LWAB for her to make an informed decision as to who would represent her moving forward," none of them provided her "any material information regarding [Williams's] departure from LWAB." Instead, she alleges, Williams merely told Hanna that he had "started [his] own law firm" and did not ask Hanna to execute a contract with him or his new firm, although LWAB executed an assignment of the case to Williams.

In November 2017, the homebuyers filed a lawsuit (the Homebuyers' Lawsuit) against Hanna, alleging violations of the DTPA, fraud, and breach of express and implied warranties. Williams continued to represent Hanna and, as the Homebuyers' Lawsuit pended, Hanna "consistently expressed dismay about the costs of litigation and sought answers from Williams about having the lawsuit summarily dismissed." More than once she "instructed Williams" to "go to the judge" and ask him to "throw this lawsuit out" because of the seller's disclosure and "as is" contract. Hanna alleges that on "numerous occasions" Williams represented to her that he would file a motion for summary judgment to have the case dismissed and that he had begun drafting such motion. Instead, Hanna alleges, Williams billed her for "years of costly and unnecessary work" that included filing an answer with a full set of discovery, compelling mediation, adding eleven third-party defendants, conducting discovery on those defendants, and encouraging Hanna to retain an expert at a cost of more than $15,000. Over the course of "more than three years of unnecessary litigation," Williams "milked Hanna for approximately $120,000 in attorney's fees and expenses." Instead of the "simple" solution of

3

following her instructions and filing a motion for summary judgment, she alleged that the defendants "put their interests ahead of" hers by "churning fees on a case that was ripe for dismissal from the outset and could have been easily dismissed by way of a traditional motion for summary judgment." On Williams's advice, Hanna ultimately settled the Homebuyers' Lawsuit in April 2020.

In March 2021, Hanna filed a lawsuit against the Williams Parties for negligence, gross negligence, breach of fiduciary duty, and DTPA violations and against the Leighton Parties for negligence and gross negligence. After answering the lawsuit,[2] the Williams Parties filed a TCPA motion to dismiss, as did the Leighton Parties. The trial court granted appellees' respective motions, dismissed all of Hanna's claims against appellees, and ordered Hanna to pay attorney's fees of $20,000 each to the Leighton Parties and the Williams Parties.[3]

Thereafter, the trial court—without stating its reasons—granted Hanna's motion for summary judgment on the Williams Parties' counterclaims, in which she argued that the counterclaims had no merit because the Williams Parties were not parties to the engagement agreement between her and LWAB, that there was no proper assignment of that agreement to the Williams Parties, and that—in any event—the provision on which the Williams Parties relied was unconscionable and thus void. The trial court's summary-judgment order dismissed the counterclaims; determined that "in accordance with" Section 38.001 of the Civil Practice and

---

[2] In their answer, the Williams Parties filed counterclaims against Hanna for quantum meruit and breach of contract, seeking reimbursement of the alleged discounts or "written-off fees" they had provided to Hanna, citing a provision in the engagement agreement between Hanna and LWAB.

[3] The trial court also sustained most of the Leighton Parties' objections to Hanna's Declaration, which she attached to her response to appellees' motions to dismiss, and Hanna does not challenge those rulings on appeal.

Remedies Code, Hanna was "entitled to reasonable and necessary attorney's fees incurred in defending the counterclaims"; and ordered Hanna to file a motion for attorney's fees supported by billing records within seven days "should [she] seek reasonable and necessary attorney's fees as ordered above." Hanna timely filed an application for attorney's fees, in which she argued that she was entitled to attorney's fees under both Section 38.001 and the parties' engagement agreement. The Williams Parties filed a response opposing Hanna's application for attorney's fees. After a hearing on the issue, the trial court signed an order denying Hanna's request for attorney's fees, rendering that order a final judgment disposing of all issues and parties. Hanna perfected this appeal of the two orders granting appellees' respective TCPA motions and of the order denying her application for attorney's fees.

## DISCUSSION

In four issues, Hanna contends that the trial court abused its discretion by (1) granting appellees' TCPA motions, (2) refusing to award her reasonable attorney's fees because appellees' TCPA motions were frivolous or brought solely to delay, (3) awarding appellees attorney's fees, and (4) failing to award her attorney's fees for successfully defending the Williams Parties' breach-of-contract counterclaims.

### *The TCPA, burdens of proof, and standards of review*

The TCPA is designed to protect a defendant's rights of speech, petition, and association and a claimant's right to pursue valid legal claims for injuries caused by the defendant, *Montelongo v. Abrea*, 622 S.W.3d 290, 295 (Tex. 2021), and the legislature has instructed that the act shall be "construed liberally to effectuate its purpose and intent fully," Tex. Civ. Prac. & Rem. Code § 27.011(b). In furthering its purpose, the TCPA establishes a

5

three-step process to evaluate whether a legal action should be dismissed for improper infringement of protected rights. *See Montelongo*, 622 S.W.3d at 295–96.

First, a party seeking dismissal bears the burden of showing by a preponderance of the evidence that the non-movant's legal action is based on or is in response to a party's exercise of the right of free speech, right to petition, or right of association. Tex. Civ. Prac. & Rem. Code §§ 27.003(a), .005(b); *Montelongo*, 622 S.W.3d at 296. As relevant to this case, the "exercise of the right to petition" includes "a communication in or pertaining to . . . a judicial proceeding," *id.* § 27.001(4)(A), and a "communication" is "the making or submitting of a statement or document in any form or medium," *id.* § 27.001(1). If the movant meets that burden, the trial court must dismiss the action unless the non-movant establishes by clear and specific evidence a prima facie case for each element of its claim. *Id.* § 27.005(b), (c); *In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015). The factual allegations in a plaintiff's petition may alone be sufficient to establish a prima facie case. *See Serafine v. Blunt*, 466 S.W.3d 352, 360 (Tex. App.—Austin 2015, no pet.). Finally, even if the non-movant satisfies its burden of establishing a prima facie case, the court "shall dismiss a legal action against the moving party if the moving party establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim." Tex. Civ. Prac. & Rem. Code § 27.005(d). In determining whether the TCPA applies and whether to dismiss the case, the trial court considers "the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." *Id.* § 27.006(a); *In re Lipsky*, 460 S.W.3d at 587.

A "prima facie case" refers to evidence that is "sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *Landry's, Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40, 54 (Tex. 2021). It is "the minimum quantum of evidence necessary to

6

support a rational inference that the allegation of fact is true." *Id.* The claimant must submit evidence of facts to make the prima facie case. *Montelongo*, 622 S.W.3d at 301; *see* Tex. Civ. Prac. & Rem. Code § 27.005(c). Evidence of a prima facie case must be clear and specific to avoid dismissal, meaning that a "plaintiff must provide enough detail to show the factual basis for its claim." *Landry's*, 631 S.W.3d at 54 (quoting *Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017)); *see* Tex. Civ. Prac. & Rem. Code § 27.005(c).

We review de novo whether appellees met their burden of showing the TCPA's applicability, and, if so, whether Hanna presented clear and specific evidence establishing a prima facie case for each essential element of her challenged claims. *See Serafine v. Blunt*, 466 S.W.3d 352, 357 (Tex. App.—Austin 2015, no pet.). A non-movant has the burden to prove that a statutory exemption from application of the TCPA applies, *Martin v. Walker*, 606 S.W.3d 565, 569 (Tex. App.—Waco 2020, pet. denied), and we review de novo a trial court's determination regarding the applicability of a TCPA exemption, *Grant v. Pivot Tech. Sols., Ltd.*, 556 S.W.3d 865, 873 (Tex. App.—Austin 2018, pet. denied).

### Whether the TCPA applies

Hanna contends that appellees failed to meet their burden to demonstrate by a preponderance of the evidence that her lawsuit is "based on or is in response to" their exercise of the right to petition. *See* Tex. Civ. Prac. & Rem. Code §§ 27.005(b), 27.001(1), (4)(A). She first argues that appellees failed to identify any specific "communications" they made in or pertaining to a judicial proceeding and thus, by definition, they were not exercising their right to petition. *See Wendt v. Weinman & Assocs., P.C.*, 595 S.W.3d 926, 930 (Tex. App.—Austin 2020, no pet.) ("Although the TCPA's definition of the right to petition is 'expansive,' . . . . the burden

7

nonetheless remains on the movant to identify the communication made by the movant that supports application of the TCPA." (citation omitted)). Furthermore, she alleges, her claims are "not based on communications by [appellees], but are quite literally based on [their] failure to communicate and failure to act," which cannot constitute the exercise of the right to petition. We disagree for two reasons.

First, although in her live petition Hanna makes several generalized complaints about appellees' "failure" to properly represent her interests and communicate with her, she makes only two specific complaints about their alleged failures to communicate or act: their failure to file a motion for summary judgment (despite her instructions to do so) and failure to notify her that Williams was leaving the LMAB firm and obtain her informed consent for the Williams Firm to continue to represent her.[4] Apart from those specific complaints, the bulk of her factual allegations identify *affirmative* actions and communications by appellees: (1) representing to her "on numerous occasions" that they had been drafting and would file a motion for summary judgment and seek to have the case dismissed, (2) filing an answer with a full set of discovery, (3) filing a motion to compel mediation, (4) adding several third-party defendants, (5) conducting discovery on the third-party defendants, (6) "encouraging her" to retain, and in fact retaining, an expert witness at a high cost, (7) performing "years of" unnecessary work on the case, and (8) ultimately advising her to settle the case. In their respective motions to dismiss, appellees identify the paragraphs of Hanna's live petition in which she makes such allegations, and they therefore have identified the alleged communications and actions constituting their exercise of the right to petition.

---

[4] This latter alleged "failure" to inform Hanna that Williams had left the LMAB Firm is more appropriately construed as a misleading or incomplete communication, in that Hanna alleges that Williams merely wrote to her, "[n]ote that I have started my own law firm below."

8

Secondly, and contrary to Hanna's contention that a failure to communicate may never constitute the right to petition under the TCPA, this and other courts have held that when attorneys' alleged failure to communicate is "in substance a criticism of [the attorneys'] communication," the attorneys will be considered to have been exercising their right to petition if the alleged failure occurred in or pertained to a judicial proceeding. *See Mustafa v. Pennington*, No. 03-18-00081-CV, 2019 WL 1782993, at *3 (Tex. App.—Austin Apr. 24, 2019, no pet.) (mem. op.); *see also Winstead PC v. USA Lending Grp., Inc.*, No. 12-20-00172-CV, 2021 WL 1047208, at *3 (Tex. App.—Tyler Mar. 18, 2021, pet. filed) (mem. op.) (concluding that where basis of malpractice lawsuit was attorney's alleged failure to include request for damages in motion for default judgment filed on behalf of client, it nonetheless constituted "communication in a judicial proceeding" and fell under DTPA); *Brown Sims, P.C. v. L.W. Matteson, Inc.*, 594 S.W.3d 573, 577 (Tex. App.—San Antonio 2019, no pet.) (concluding that attorneys filing answer in court on behalf of client were exercising right to petition even though client's professional-negligence claim was based on attorneys' "failure to make a communication" by not including affirmative defense in answer).[5]

Although Hanna frames several of appellees' alleged breaches of their legal duties as "failures" to communicate, those alleged failures are interwoven with her allegations about

---

[5] We are not persuaded by Hanna's argument that we should not rely on the cited authorities that predate the 2019 amendments, when the "relates to" phrase was removed from the statute. *See ML Dev., LP v. Ross Dress for Less, Inc.*, 649 S.W.3d 623, 626–27 (Tex. App.— Houston [1st Dist.] 2022, pet. denied) (opining that 2019 amendments deleted broadest category of connection—"a legal action that relates to a party's exercise" of a protected right—and thus statute now requires movants to establish "a closer nexus between the claims against them and the communications they point to"). We rely on those authorities for the proposition that courts look to the substance of a plaintiff's complaint about her attorneys' representation to determine whether the complaint is factually predicated on the attorneys' exercise of their right to petition, which point is unaffected by the amendments.

9

appellees' alleged improper, fraudulent, or negligent communications in or pertaining to a judicial proceeding (i.e., the Homebuyers' Lawsuit). The sum of alleged communications, filings, failures, and conduct about which Hanna complains—i.e., appellees' legal representation of her—constitutes not only the basis of her lawsuit but also the alleged cause of the damages she claims. In other words, Hanna complains largely about alleged "unnecessary" legal work, which caused her to incur the high fees about which she complains, and specifically identifies that unnecessary or negligent work as allegedly false communications and unnecessary or improper court filings and litigation communications. We conclude that the TCPA applies to her claims because they are based on appellees' alleged communications.

Within this issue, Hanna also argues that appellees could not rely on communications they made *on her behalf* in invoking the right to petition but that instead the legal action at issue must be based on or in response to appellees' communications made on their *own* behalf. However, the supreme court has expressly held that attorneys acting on behalf of their clients are exercising their TCPA right to petition, basing its holding on the act's "expansive" definition of "exercise of the right to petition." *See Youngkin v. Hines*, 546 S.W.3d 675, 680–81 (Tex. 2018) (holding that attorney's reciting of Rule 11 agreement in open court on behalf of client constituted attorney's "exercise of the right to petition" as defined in TCPA); *see also* Tex. Civ. Prac. & Rem. Code § 27.001(4)(A) (defining "exercise of the right to petition"); *Winstead P.C.*, 2021 WL 10472058, at \*2 (applying *Youngkin* to hold that TCPA applies to claims based on filing lawyer makes on behalf of client in underlying litigation); *Brown Sims, P.C.*, 594 S.W.3d at 577 (same).[6] We thus conclude that the TCPA applies to Hanna's lawsuit

---

[6] The cases on which Hanna relies are distinguishable because they involved communications made by *non-attorneys* and did not, therefore, involve communications made in

10

and next consider her contention that her claims are exempt from the act under either or both of two exemptions.

### *Whether the commercial-speech exemption applies*

The so-called commercial-speech exemption expressly provides that the TCPA does not apply to "a legal action brought against a person primarily engaged in the business of selling or leasing goods or services if the statement or conduct arises out of the sale or lease of goods, services, . . . or a commercial transaction in which the intended audience is an actual or potential buyer or customer." Tex. Civ. Prac. & Rem. Code § 27.010(a)(2). The Texas Supreme Court has construed the exemption to apply when:

(1) the defendant was primarily engaged in the business of selling or leasing goods [or services],

(2) the defendant made the statement or engaged in the conduct on which the claim is based in the defendant's capacity as a seller or lessor of those goods or services,

(3) the statement or conduct at issue arose out of a commercial transaction involving the kind of goods or services the defendant provides, and

(4) the intended audience of the statement or conduct were actual or potential customers of the defendant for the kind of goods or services the defendant provides.

*Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 688 (Tex. 2018). The commercial-speech exemption applies "only to *certain* communications related to a good, product, or service in the marketplace—communications made not as a protected exercise of free speech by an individual,

---

the context of attorney-client relationships. *See Szymonek v. Guzman*, 641 S.W.3d 553, 566–67 (Tex. App.—Austin 2022, pet. denied); *Lugo v. Sanchez*, No. 03-21-00058-CV, 2021 WL 5312323, at *5 (Tex. App.—Austin Nov. 12, 2021, pet. filed) (mem. op.).

11

but as 'commercial speech which does no more than propose a commercial transaction.'" *Id.* at 690 (internal citation omitted).

"The burden to establish the commercial-speech exemption is on the party relying on it." *Grant*, 556 S.W.3d at 887. We consider the pleadings and record evidence to determine whether a party has met its burden on the exemption's elements. *See Rose v. Scientific Mach. & Welding, Inc.*, No. 03-18-00721-CV, 2019 WL 2588512, at *4 (Tex. App.—Austin June 25, 2019, no pet.) (mem. op.). Factual allegations in a plaintiff's petition alone may be sufficient to meet the exemption's elements. *See id.*; *see also Dickens v. Jason C. Webster, P.C.*, No. 05-17-00423-CV, 2018 WL 6839568, at *6 (Tex. App.—Dallas Dec. 31, 2018, no pet.) (mem. op.) (analyzing plaintiff's allegations in petition to determine what statements or conduct were at issue and concluding that plaintiff failed to show that defendant's alleged statements or conduct satisfied elements of commercial-speech exemption). Appellees concede that the first element is met (i.e., they were primarily engaged in the business of selling legal services at the relevant time). Thus, we consider whether Hanna established each of the other elements.

We conclude that Hanna did not establish the second or third elements because the challenged statements and conduct of appellees—their alleged misrepresentations to her and their alleged filing of unnecessary and excessive court and discovery documents—were not made in their capacity as sellers of legal services and did not arise out of a commercial transaction involving the sale of legal services. In other words, the alleged communications and actions were not *about* appellees' legal services or business of selling legal services, were not made in appellees' *capacity* as sellers of legal services, and did not *arise out of the sale or solicitation* of legal services because Hanna had already hired them to represent her; the communications and conduct occurred in the context of appellees' legal representation through an attorney-client

12

relationship.[7] *See Winstead, P.C.*, 2021 WL 1047208, at \*4 (concluding that commercial-speech exemption did not apply to plaintiff's suit against her attorney based on attorney's filing of motion to enter default judgment because such communication did not "arise out of" sale or solicitation of legal services or commercial transaction); *cf. Gaskamp v. WSP USA, Inc.*, 596 S.W.3d 457, 481 (Tex. App.—Houston [1st Dist.] 2020, pet. dism'd) (concluding that because defendants' challenged conduct of sending advertising brochures to plaintiff's clients occurred in context of furthering their employer's business and securing sales, it met second *Castleman* requirement).

As the supreme court has instructed, the commercial-speech exemption is aimed at communications that "do no more than propose a commercial transaction," and the context in which they are made is dispositive. *See Castleman*, 546 S.W.3d at 620. We decline to hold that the attorneys' alleged communications and actions here—performed solely in the course of representing an established client—constitute "commercial speech" as defined by the TCPA and applied by the supreme court.[8]

---

[7] We also note that Hanna has not cited, and we have not found, any cases in which the commercial-speech exemption has been applied to legal-malpractice claims.

[8] Although we need not reach the fourth *Castleman* element, this Court has previously held that communications constituting court filings do not have as their intended audience an actual or potential customer; by analogy, neither would communications in the form of discovery served on opposing parties. *See Jones-Hospod v. Maples*, No. 03-20-00407-CV, 2021 WL 3883884, at \*5 (Tex. App.—Austin Aug. 31, 2021, pet. denied) (mem. op.) (holding that fourth *Castleman* element was not met because district court, not actual or potential customer, was intended audience of attorney's filing of court documents on behalf of client).

13

***Whether the DTPA exemption applies***

Hanna contends that the trial court erred in granting the Williams Parties' TCPA motion as to her DTPA claim because such claims are exempted from the TCPA.[9] *See* Tex. Civ. Prac. & Rem. Code § 27.010(a)(7) ("This chapter does not apply to . . . a legal action brought under Chapter 17, Business and Commerce Code, other than an action governed by Section 17.49(a) of that chapter."). The Williams Parties respond, as they argued below, that Hanna may not split or "fracture" her professional-negligence claim into multiple separate claims for purposes of avoiding the TCPA. We agree with the Williams Parties.

The rule against "fracturing" professional-negligence claims provides that a "case arising out of an attorney's alleged bad legal advice or improper representation" may not be "split out into separate claims for negligence, breach of contract, or fraud because the real issue remains one of whether the professional exercised that degree of care, skill, and diligence that professionals of ordinary skill and knowledge commonly possess and exercise." *Beck v. Law Offices of Edwin J. (Ted) Terry, Jr., P.C.*, 284 S.W.3d 416, 426–27 (Tex. App.—Austin 2009, no pet.). The anti-fracturing rule serves to "prevent[] legal-malpractice plaintiffs from opportunistically transforming a claim that sounds only in negligence into other claims to avail themselves of longer limitations periods, less onerous proof requirements, or other tactical advantages." *Id.* at 427 (internal quotation omitted). In determining whether a complaint is a claim for negligence or something else, the court is not bound by the labels the parties place on their claims. *Id.* at 427–28. Instead, courts look to the "gist" of the complaint and determine

---

[9] Hanna asserted her DTPA claim against the Williams Parties only, not against the Leighton Parties.

whether it "ultimately goes to the adequacy of the lawyer's legal representation," which is a legal determination. *Id.* at 428, 431–32.

A review of Hanna's petition and factual allegations reveals that the same specific complaints underlie each of the causes of action that Hanna brought against appellees, including the DTPA claim, all comprising the same overarching complaint: she received allegedly negligent legal representation. We conclude that Hanna may not fracture her professional-negligence claim to avoid application of the TCPA and that she did not, therefore, prove her entitlement to the DTPA exemption.

Having determined that neither of the two exemptions cited by Hanna apply, we turn to her argument that she established a prima facie case for her claims.

### Whether Hanna established a prima facie case

To prevail on her claim alleging professional negligence against appellees, Hanna must prove that appellees owed her a duty and breached that duty and that the breach proximately caused her injury, resulting in damages. *Id.* at 426. As they did below, appellees contend that Hanna did not establish a prima facie case as to breach and proximate cause because those are elements on which a plaintiff cannot ordinarily prevail without expert testimony, and she did not include any expert testimony in her response or pleadings. *See Alexander v. Turtur & Assocs.*, 146 S.W.3d 113, 119–20 (Tex. 2004) (noting that while expert-witness testimony is required in legal-malpractice cases when causal link is "beyond the jury's common understanding," in some cases "the client's [own] testimony may provide this link"); *Ersek v. Davis & Davis, P.C.*, 69 S.W.3d 268, 271 (Tex. App.—Austin 2002, pet. denied) ("In Texas, a

15

plaintiff in a legal malpractice suit is required to present expert testimony regarding the standard of skill and care ordinarily exercised by an attorney.").

While appellees are correct that Hanna will be unlikely to ultimately prevail on her negligence claims without expert testimony on at least the element of breach, they do not provide any authority for their assertion that establishing "clear and specific evidence" of a prima facie case for TCPA purposes requires expert testimony, and we have found none. Rather, some of our sister courts have expressly rejected that assertion. *See Robins v. Clinkenbeard*, No. 01-19-00059-CV, 2020 WL 237943, at *9–10 (Tex. App.—Houston [1st Dist.] Jan. 16, 2020, pet. denied) (mem. op.); *Moldovan v. Polito*, No. 05-15-01052-CV, 2016 WL 4131890, at *15 (Tex. App.—Dallas Aug. 2, 2016, no pet.) (mem. op.). We believe those holdings are sound, being consistent with (1) the text of the TCPA, which states no such requirement, *cf.* Tex. Civ. Prac. & Rem. Code § 74.351 (requiring plaintiff asserting health-care-liability claim to serve statutorily sufficient expert report to avoid dismissal); (2) the Texas Rules of Procedure, which generally do not require disclosure of experts until ninety days before the end of the discovery period, while TCPA motions are typically filed very early in a case before discovery has even begun, *compare id.* § 27.003(b) (stating that deadline to file TCPA motion to dismiss is sixty days after service of legal action), *with* Tex. R. Civ. P. 195.2(a) (requiring parties seeking affirmative relief to designate experts ninety days before end of discovery period or thirty days after served with request); and (3) the supreme court's explanation that a prima facie case is the "minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true," in other words, "enough detail to show the factual basis for [plaintiff's] claim," *see In re Lipsky*, 460 S.W.3d at 590. We thus conclude that Hanna's failure to submit expert

testimony in response to appellees' motions is not fatal to whether she established a prima facie case as to negligence.

We thus consider whether Hanna's evidence contains enough detail to show the factual basis for the challenged elements of her claims, *see id.* at 587; that is, whether it is sufficient as a matter of law to establish the facts supporting the elements of her claim if not rebutted or contradicted, *see Landry's, Inc.*, 631 S.W.3d at 54. We first note that the evidence on which the trial court based its conclusion that Hanna did not establish a prima facie case was rather limited, due to the court's sustaining the Leighton Parties' objections to several paragraphs of Hanna's Declaration on the basis of their being conclusory, "mere opinion," and speculation, among a few other objections. Conclusory statements and bare, baseless opinions are not probative and accordingly will not suffice to establish a prima facie case under the TCPA; instead, opinions and conclusions must be based on demonstrable facts and a reasoned basis. *See In re Lipsky*, 460 S.W.3d at 592.

The trial court sustained each of the objections, without stating the basis of its ruling.[10] The excluded portions of Hanna's Declaration include the following:

- Appellees "failed to provide me with sufficient notice and information regarding Williams' departure from LWAB or his continued representation."

- Appellees "failed to protect my interests in the underlying litigation."

- Appellees "failed to . . . fil[e] a motion for summary

---

[10] The trial court sustained in part and overruled in part one of the objections, but the statement underlying that ruling is not relevant to the determination of whether Hanna established a prima facie case.

judgment, which would have quickly and efficiently disposed of the cla[i]ms against me and my entities."

- "[H]ad Defendants filed a motion for summary judgment on behalf of me and my entities, the underlying litigation would have been dismissed and I would have avoided approximately $120,000 in attorney's fees and costs . . . [and] I would have been able to demonstrate that [the Homebuyers' Lawsuit] was groundless or brought in bad faith for the purpose of harassment, and therefore would have [been] entitled . . . to reasonable and necessary attorney's fees."

- "It is . . . the opinion of my attorneys . . . that work performed as reflected in these billing records was unnecessary and much of the work could have been avoided by filing a motion for summary judgment."

- "[I]t is the opinion of my attorneys . . . that Defendants performed this unnecessary work and did not file a motion for summary judgment so that they could charge me for work that was not necessary, unnecessarily increase the scope of litigation, and obtain thousands of dollars in attorney's fees they would not have otherwise obtained."

These excluded portions of Hanna's Declaration track many of the same factual allegations in her petition, and Hanna does not challenge any of the evidentiary rulings. She therefore cannot rely on the excluded statements—or the equivalent statements in her petition—to argue on appeal that she established a prima facie case. Moreover, even if the trial court had not sustained the Leighton Parties' objections, we would conclude that the at-issue statements in Hanna's petition and Declaration are conclusory and thus insufficient to establish a prima facie case as to breach and causation. *See id.*

Furthermore, we conclude that the non-excluded evidence on which Hanna relies to support proximate cause is insufficient to establish a prima facie case: the "as is" contract with

18

Homebuyers, her opinion that the bulk of appellees' work on her behalf in the Homebuyers' Lawsuit was "unnecessary," Williams's failure to provide her "material information regarding his departure" from LWAB, and Williams's failure to file a motion for summary judgment despite his representations that he would do so. Even viewed together, this evidence does not provide enough detail to demonstrate the factual basis for the element of proximate cause—that is, demonstrable facts showing that appellees' alleged failures and communications caused Hanna harm.[11] The trial court did not err in granting appellees' TCPA motions and dismissing Hanna's claims. We accordingly overrule Hanna's first issue, and we also overrule her second issue because it hinges on a determination that the trial court improperly granted the TCPA motions. We thus proceed to Hanna's third issue.

### Whether the attorney's fees awarded to appellees was supported

In her third issue, Hanna contends that the trial court abused its discretion in awarding $20,000 in attorney's fees each to the Williams Parties and the Leighton Parties because those awards were unreasonable and unsupported by evidence. *See* Tex. Civ. Prac. & Rem. Code § 27.009(a)(1) (providing that if legal action is dismissed under TCPA, court "shall award to the moving party court costs and reasonable attorney's fees incurred in defending against the legal action"). While we review a trial court's decision whether to award attorney's fees for an abuse of discretion, we review the amount awarded under a legal-sufficiency standard. *Aaron Rents, Inc. v. Travis Cent. Appraisal Dist.*, 212 S.W.3d 665, 671 (Tex. App.—

---

[11] Because we have already concluded that Hanna may not fracture her claim to also make claims for violations of the DTPA and breach of fiduciary duty, we need not address whether she established a prima facie case as to those claims. However, we note that both of those claims have causation as a requisite element for a plaintiff to prevail. *See Finger v. Ray*, 326 S.W.3d 285, 291 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

Austin 2006, no pet.). A party seeking attorney's fees must prove the amount as well as the reasonableness and necessity of the fees sought. *Infowars, LLC v. Fontaine*, No. 03-18-00614-CV, 2019 WL 5444400, at \*6 (Tex. App.—Austin Oct. 24, 2019, pet. denied) (mem. op.) (citing *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 762–63 (Tex. 2012)).

Regarding the award to the Williams Parties, Hanna argues that (1) some of their evidence included time entries (amounting to $7,326.00 in billings) for alleged discovery work performed after the TCPA motions were filed, which filings automatically stayed discovery, *see* Tex. Civ. Prac. & Rem. Code § 27.003(c), and thus the work was neither reasonable nor necessary; (2) some of their evidence included "duplicative" time entries (amounting to $1,006.50 in billings) because more than one attorney attended the same teleconferences; and (3) some of the time entries were so "heavily redacted" that they "constitute no evidence at all." Regarding the award to the Leighton Parties, Hanna argues that (1) some of the time entries relate to time allegedly spent analyzing or discussing "indemnification" issues and "cross claims" against the Williams Parties, which work was not necessary to defense of the legal action; and (2) some of the time entries are so "heavily redacted" that they "constitute no evidence at all."

The Williams Parties requested a total of $22,506.00 in attorney's fees incurred to date; the trial court awarded $20,000.00. As for alleged discovery work performed after the automatic stay was in place, our review of the billing records reveals that the challenged entries were not for the drafting of discovery but for the review of voluminous client documents "to identify key issues of concern" regarding the lawsuit and "in preparation of supplementing initial disclosures." Attorneys' review of their clients' documents is a reasonable and necessary step in litigating a case and, specifically here, preparing a defense; the fact that such review also serves

20

to provide the attorneys with the necessary information to potentially supplement discovery at a later date does not render it unnecessary or unreasonable despite a current stay of discovery.

As for the alleged too-heavily redacted time entries, we agree with Hanna. When billing records do not contain enough specifics to allow a factfinder to determine whether the work performed was reasonable and necessary, it is legally insufficient. *See Person v. MC-Simponsville, SC-1-UT, LLC*, No. 03-20-00560-CV, 2021 WL 3816332, at *8–9 (Tex. App.—Austin Aug. 27, 2021, no pet.) (mem. op.) (citing standard for reviewing attorney's-fees awards in *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 498 (Tex. 2019), and concluding that redacted billing records were legally insufficient, and attorney testimony was too general, to allow trial court to determine whether hours worked were reasonable and necessary). Most of the challenged entries here merely identify that a certain person "corresponded" with a certain other person or "analyzed" an unidentified issue, and the affidavit by the Williams Parties' attorney does not provide the missing specifics. While the trial court reduced the award by $2,506.00 from that requested, the total billings derived from the too-heavily redacted billing records exceed that difference. We therefore hold that the proof as to the attorney's fees for the Williams Parties did not provide the trial court with legally sufficient evidence to calculate a reasonable fee award, reverse that portion of the trial court's order granting the TCPA motion of the Williams Parties, and remand for a redetermination of the attorney's fees to which the Williams Parties are entitled.[12] *See id.* at *9. We sustain this portion of Hanna's third issue.

The Leighton Parties requested a total of $24,737.00 in attorney's fees; the trial court awarded only $20,000.00. The sum of charges for the time entries about which Hanna

---

[12] As for the alleged "duplicative" entries for time spent by two attorneys attending the same teleconferences, those entries are already accounted for in Hanna's complaint about too-heavily redacted time entries and we need not, therefore, separately address them.

21

complains equals less than the $4,737.00 difference. Thus, she cannot demonstrate that she was harmed by the trial court's consideration of such evidence. *See* Tex. R. App. P. 44.1 (harmful-error rule). We overrule this portion of Hanna's third issue.

### *Whether Hanna was entitled to attorney's fees because she "prevailed" on her counterclaim*

In her final issue, Hanna argues that the trial court abused its discretion in failing to award her attorney's fees with respect to the Williams Parties' breach-of-contract counterclaims because she was the "prevailing party" on those claims and the parties' engagement agreement entitled her to reasonable fees therefore. She cites the following provisions in the engagement agreement:

> Should either party pursue action to enforce any of the provisions hereof, or to recover damages for the breach of this legal services contract, the non-prevailing party in any final judgment agrees to pay the other party all reasonable costs, charges, and expenses, including attorney's fees, expended or incurred in connection therewith. [The attorney's-fees provision] In case of any billing dispute or fee dispute, you agree that we will be entitled to full reimbursement of all sums that have been previously "no charged" or discounted or written off, and for any accrued but uncharged interest. [The fee-dispute provision]

The trial court's order denying Hanna attorney's fees recites, "The Court . . . is of the opinion that . . . Plaintiffs are not entitled to recovery of attorney's fees from the [Williams Parties] on a contractual basis based upon the doctrine of judicial estoppel."[13] The Williams

---

[13] The trial court's order also recited that Hanna was not entitled to attorney's fees under Chapter 38 of the Texas Civil Practice and Remedies Code, *see* Tex. Civ. Prac. & Rem. Code § 38.001, in contrast to its earlier order granting Hanna's summary-judgment motion and determining that she was entitled to fees under that chapter, but Hanna does not challenge the trial court's denial of fees under that chapter.

Parties had argued in their response opposing Hanna's request for attorney's fees that Hanna was judicially estopped from obtaining attorney's fees under the attorney's-fees provision because she had taken the position that the Williams Parties were not parties to the agreement (only LWAB was) and the agreement had not been properly assigned to them.[14] Thus, they argued, Hanna could not benefit from the attorney's-fee provision (i.e., by enforcing it against the Williams Parties) while simultaneously benefiting from the opposite position that the Williams Parties were not parties to the agreement and had no standing to enforce it (i.e., by prevailing on her summary-judgment motion).

While appearing to concede that those two positions are at odds, Hanna contends that judicial estoppel is inapplicable here because it "does not apply to contradictory positions taken in the same proceeding." *See Pleasant Glade Assembly of God v. Schubert*, 264 S.W.3d 1, 8 (Tex. 2008). Hanna correctly recites the context in which the doctrine of judicial estoppel ordinarily applies—in two different proceedings, not within the same one, *see id.*; *Toll Dallas TX, LLC v. Dusing*, No. 03-18-00099-CV, 2019 WL 2127885, at *8 (Tex. App.—Austin May 16, 2019, no pet.) (mem. op.)—but we conclude that the trial court nonetheless did not abuse its discretion in refusing to award her attorney's fees because of its determination that the Williams Parties were not parties to the agreement and were not proper assignees of it.

The trial court had previously granted Hanna's motion for summary judgment. Among the grounds that Hanna asserted in that motion were that the Williams Parties were not

---

[14] While it does not appear in the clerk's record, the Williams Parties represent that in her verified answer to the counterclaim, Hanna averred that the Williams Parties "are not parties" to the agreement, that Neither Upside Properties nor Upside Up Ventures were parties to it either, and that the Williams Parties could not enforce any purported "assignment" of the agreement to them. Hanna made the same arguments in her motion for summary judgment.

parties to the engagement agreement and had not obtained a proper assignment thereof.[15]

Although the trial court's order granting Hanna summary judgment did not state the basis of its ruling, its later ruling on Hanna's application for attorney's fees—declaring that she was judicially estopped from obtaining attorney's fees under the agreement—effectively clarified that the court had determined there was merit to Hanna's arguments about the Williams Parties not being parties to or assignees of the agreement. Hanna was entitled to summary judgment on this ground, as it is blackletter contract law that, absent exceptions not applicable here, only parties to an agreement may enforce it, and they may enforce it only against other parties to the agreement. *See South Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 306 (Tex. 2007); *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 194 & n.42 (Tex. 2007); *see also Texas Workers' Comp. Comm'n v. Patient Advocates*, 136 S.W.3d 643, 648 (Tex. 2004) (noting that when trial court does not state basis on which it granted summary judgment, appellate court must affirm if any of movant's theories has merit). Because the Williams Parties were not parties—either directly or through assignment—to the engagement agreement, there was no enforceable agreement

---

[15] The remaining ground Hanna asserted was that the fee-dispute provision, which the Williams Parties sought to enforce by way of their counterclaims, was unconscionable because it allegedly violates the Disciplinary Rules of Professional Conduct, rendering the provision void and unenforceable. However, the case she cited in support of that argument, *Hoover Slovacek LLP v. Walton*, 206 S.W.3d 557, 562 (Tex. 2006), turned on distinguishable facts involving a contingency-fee contract, does not stand for the proposition that any purported violation of the Disciplinary Rules equates with unconscionability, and specified that whether a fee agreement is unconscionable is a question of law. *See id.* We do not believe that the fee-dispute provision violates the two Rules she contends it violates, *see* Tex. Disc. R. Prof'l Cond. 1.04(a) (prohibiting attorneys from charging unconscionable fees), 1.08(g) (prohibiting agreements limiting attorneys' liability to a client unless permitted by law and client is independently represented in making agreement), and thus she was not entitled to summary judgment on her asserted ground that the fee-dispute provision is unconscionable, *see Pony Exp. Courier Corp. v. Morris*, 921 S.W.2d 817, 821 (Tex. App.—San Antonio 1996, no writ) (noting that although unconscionability must be determined on case-by-case basis, it generally describes "a contract that is unfair because of its overall one-sidedness or the gross one-sidedness of one of its terms").

between them and Hanna and, thus, she could not enforce the attorney's-fees provision—or any provision of the agreement—against the Williams Parties. The trial court did not err in denying Hanna's request for attorney's fees as to the Williams Parties' counterclaims, and we accordingly overrule her fourth issue.

## CONCLUSION

We reverse the portion of the trial court's order granting the TCPA motion of the Williams Parties that awarded them attorney's fees and remand that issue for a redetermination of fees. We affirm the remainder of that order, affirm the trial court's order granting the TCPA motion of the Leighton Parties, and affirm the trial court's order denying Hanna's application for attorney's fees.

_____

Thomas J. Baker, Justice

Before Chief Justice Byrne, Justices Baker and Kelly

Affirmed in Part; Reversed and Remanded in Part

Filed: December 7, 2022

25